UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BENCHMARK TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 22-10227-LTS |
| YUQIANG TU and KIFONIX TECHNOLOGY, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON PLAINTIFF'S APPLICATION FOR AN
AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS (DOC. NO. 218)

May 30, 2023

SOROKIN, J.

Plaintiff Benchmark Technologies, Inc. moves this Court for an award of reasonable attorneys' fees and costs. Doc. No. 218. Specifically, as of the time of the filing of their Motion, Benchmark sought $1,704,845 in fees and $210,208.50 in costs. Id. at 1. Benchmark brought the following seven claims in this case: breach of non-disclosure contract (Count I), breach of non-competition contract (Count II), breach of non-solicitation contract (Count III), breach of fiduciary duty (Count IV), federal trade secret misappropriation (Count V), state trade secret misappropriation (Count VI), and violation of Mass. Gen. Laws ch. 93A § 11 (Count VII). Doc. No. 42-8. The Court on summary judgment and the jury after trial found Defendant(s) liable on Counts I–VII, however, not every theory of liability asserted under each of those counts was successful and Benchmark did not fully prevail on some of the claims because neither the Court nor the jury ruled that Benchmark suffered monetary damages under any count (damages were a

required element of some of the claims). Doc. Nos. 119, 163, 182.[1] Benchmark seeks an award of attorneys' fees and costs only under Chapter 93A. Doc. No. 218.

Chapter 93A provides, "If the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action." Mass. Gen. Laws ch. 93A § 11. In addition to showing an unfair or deceptive practice in violation of Chapter 93A § 2, a plaintiff must show that the unfair or deceptive practice "has had 'some adverse effect' on them" in order to recover attorneys' fees, "even if that adverse effect '*is not quantifiable in dollars*.'" A2Z Dental, LLC v. Miri Trading, LLC, 494 F. Supp. 3d 30, 33 (D. Mass. 2020) (emphasis in original) (quoting Jet Line Servs., Inc. v. Am. Emps. Ins. Co., 537 N.E.2d 107, 115 (Mass. 1989)). "Adverse effect" is construed broadly. Id.; see also NASCO, Inc. v. Pub. Storage, Inc., 127 F.3d 148, 154 (1st Cir. 1997) (incurring legal and electrical bills sufficient to show adverse effect even when bills were never paid). Courts have allowed awards of attorneys' fees "where a plaintiff received only injunctive relief, but no monetary damages, as an 'adverse effect.'" Kiely v. Teradyne, Inc., 13 N.E.3d 615, 627 (Mass. App. Ct. 2014); see also id. at 628 (explaining that while a preliminary injunction alone cannot support an award of attorneys' fees under Chapter 93A § 11, a form of nonmonetary relief such as permanent injunctive relief can); Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 15 (1st Cir. 1996) ("Section 11 provides for injunctive relief where the unfair practice 'may have the effect of causing . . . loss of money or property.' Mass. Gen. L. ch.

---

[1] The Court declined to rule at summary judgment on the elements of causation and damages as to the breach of contract and fiduciary duty claims, Doc. No. 119; Doc. No. 163 at 12 n.4, and the jury did not find damages under these claims, to the extent damages were sought. Doc. No. 182.

93A, § 11. Surely a demonstrated risk of future actual loss constitutes an unquantifiable 'adverse effect' within the meaning of Jet Line."); Advanced Sys. Consultants Ltd. v. Eng'g Plan. & Mgmt., Inc., 899 F. Supp. 832, 832 (D. Mass. 1995) ("[T]he target of an unfair or deceptive act or practice who incurs legal expenses in obtaining and defending injunctive relief to safeguard itself against economic loss is entitled to invoke the attorneys' fees provision of Chapter 93A."); A2Z Dental, 494 F. Supp. at 33 ("Attorney fees are allowed for 93A § 11 claims even when the court does not award damages.").

Benchmark has met the requirements for an award of attorneys' fees. It has obtained a permanent injunction. Doc. Nos. 235, 238. At summary judgment, the Court found that Defendants had engaged in unfair methods of competition and unfair or deceptive acts or practices in violation of Chapter 93A § 2. Doc. No. 119 at 34; Doc. No. 163 at 11–13. The Court also found that "Benchmark's 'demonstrated risk of future actual loss constitutes an unquantifiable adverse effect,'" Doc. No. 119 at 35 (quoting Star Fin. Servs., 89 F.3d at 15), and that Benchmark is entitled to an award of costs and reasonable attorneys' fees under Chapter 93A § 11. Id.; see also Doc. No. 163 at 13–14. At trial, the jury found that Tu and/or Kifonix committed a violation of Chapter 93A § 2 with respect to Benchmark's optical gratings design method. Doc. No. 182 at 4. The parties agreed not to submit the question of whether this optical gratings design method 93A violation had an adverse effect on Benchmark to the jury, Doc. No. 226 at 107, and Benchmark now seeks a determination on that question from the Court. Doc. No. 218 at 2. The Court finds this violation also had an adverse effect on Benchmark, in that Defendants' actions with regard to Benchmark's optical gratings design method "may have the effect of causing . . . loss of money or property," Mass. Gen. Laws ch. 93A § 11; see also Star Fin. Servs., Inc., 89 F.3d 15, and Benchmark obtained permanent injunctive relief regarding

3

Defendants' use of Benchmark's optical gratings design method. Doc. Nos. 235, 238. Thus, Benchmark is entitled to an award of reasonable fees and costs for the optical gratings design method 93A violation found by the jury, in addition to the 93A violation found by the Court at summary judgment.

Defendants challenge the award Benchmark requests in multiple ways, including disputing the total hours charged and the efficiency of Benchmark's counsel. Doc. No. 230 at 3. Specifically, Defendants argue that the total number of hours allegedly expended by Benchmark's counsel are facially unreasonable, and although the rates charged appear reasonable, attorneys charging such rates should be able to achieve greater efficiency than what is reflected in the billing records. Id. They point to the fact that throughout the trial Benchmark was represented by a litigation specialist and three attorneys—all of whom were senior attorneys, charging hourly rates of $920, $600, and $540 respectively—as an example of inefficiency and unreasonableness. Id. The Court finds that representation throughout the trial by three experienced attorneys plus a litigation specialist was too much for a case of this scope and complexity. Two attorneys plus a litigation specialist would have been reasonable. Accordingly, the Court subtracts from the fee award one third of the fees charged by the three attorneys combined for the five days of trial. Based on the invoices Benchmark submitted with this Motion, Doc. No. 219-1 at 98–99, the total amount billed for the time of attorneys Tittemore, Greenberg-Chao, and Harrison during the five days of trial (January 23, 2023–January 27, 2023) was $104,524, see id., one third of which is $34,841. The Court thus subtracts $34,841 from the $1,704,845 in attorneys' fees Benchmark seeks (which leaves $1,670,004 remaining in fees). Other than the number of lawyers, there is nothing about the handling of the trial that was unreasonable such that a reduction in fees for that reason would be warranted.

Defendants also argue that there is insufficient information—missing invoices or only partial invoices—to support various categories of costs sought by Benchmark. Doc. No. 230 at 4–5. However, the invoices submitted to the Court between Sunstein LLP and Benchmark show the expenses in each of these categories charged to Benchmark. See, e.g., Doc. No. 219-1 at 62 (separately itemizing charges to Benchmark during one invoice period for computer research, electronic discovery vendor, photocopies-outside services, expert witness DisputeSoft, and expert witness Bruce Smith). The Court finds this to be sufficient evidence that Benchmark incurred these costs for purposes of this fee award, though the Court addresses the problem of apportioning the charges for 93A vs. non-93A claim work below.

Finally, Defendants contend that Benchmark is only entitled to fees and costs related to the 93A claim. Doc. No. 230 at 3–4. Though this is generally true under Massachusetts law, see Fed. Ins. Co. v. HPSC, Inc., 480 F.3d 26, 37 (1st Cir. 2007); Incase, Inc. v. Timex Corp., 421 F. Supp. 2d 226, 244 (D. Mass. 2006), aff'd, 488 F.3d 46 (1st Cir. 2007), "where the chapter 93A claim and accompanying common law claims are largely based on identical facts, it may not be feasible to apportion the attorneys' fees between the two types of claims." Incase, 421 F. Supp. 2d at 244 (citing Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 837 N.E.2d 1121, 1138–39 (Mass. 2005)); see also, e.g., Fed. Ins. Co., 480 F.3d at 37 ("[T]o the extent that the attorneys' fees incurred in successfully defending the chapter 93A claim cannot be excised with any certainty from those related to HPSC's breach of contract defense, HPSC is entitled to the fees common to both claims, since the two are based on the same core of facts."); A2Z Dental, 494 F. Supp. 3d at 34. In such cases where apportionment is infeasible, however, courts still "must deduct the approximate amount of fees for 'items wholly unrelated' to proving the 93A claims." A2Z Dental, 494 F. Supp. 3d at 35 (quoting Incase, 421 F. Supp. 2d at 244). If counsel's

submissions of records lack "sufficient detail to allow the Court to account for such time accurately, and the Court is concerned that plaintiff should not derive a benefit from counsel's poor record-keeping," the court may estimate the time unrelated tasks took and deduct a corresponding amount from the award. Incase, 421 F. Supp. 2d at 244.

Here, the facts supporting Benchmark's successful 93A claim substantially overlap with the facts supporting the other claims in the case. Consequently, it would be impossible to precisely apportion the time spent pursuing the 93A claim alone, and the Court will not attempt to do so. See Incase, 421 F. Supp. 2d at 244. The Court is, though, required to deduct an amount approximating the time spent "on items wholly unrelated to proving the chapter 93A portion of the case." Id. Such unrelated items in this case include, among other items, researching the legal standard on the six non-93A claims, briefing and arguing those non-93A claims at summary judgment (twice) and other stages of the case (such as the motion for temporary and preliminary injunctive relief), developing jury instructions on the non-93A claims, and trial preparation for the non-93A claims. Ordinarily, the Court might seek to parse the fees charged for work related to individual motions or tasks—such as total fees for summary judgment research/briefing, total fees for jury instruction research/drafting, etc.—and then deduct an amount from those totals approximating the portion of those hours spent on tasks wholly unrelated to the 93A claim. However, the billing records submitted by Benchmark's counsel in support of this motion for fees and costs use a "block billing" method such that the Court cannot ascertain the time spent on or fees charged for specific tasks. The Court "is concerned that plaintiff should not derive a benefit from counsel's" lack of specificity in its record keeping. Id. Accordingly, the Court will apply an across-the-board 50 percent reduction to the award of fees and costs, which the Court views as fairly approximating a reduction for time and costs wholly unrelated to the 93A claim.

Accordingly, Benchmark's Motion for an Award of Reasonable Attorneys' Fees and Costs (Doc. No. 218) is ALLOWED IN PART and Benchmark is entitled to an award of reasonable fees and costs in the amounts of $835,002[2] in fees and $105,104 in costs.

                                            SO ORDERED.

                                         /s/ Leo T. Sorokin
                                        Leo T. Sorokin
                                        United States District Judge

---

[2] This amount represents a 50 percent reduction of the amount in fees remaining after the Court applied the reduction for the unnecessary third attorney at trial above (i.e., a 50 percent reduction of $1,670,004).